1997–NMCA–028

936 P.2d 863

**Donald D. DUNCAN, Plaintiff–Appellant,**

v.

**Thomas K. CAMPBELL II; Thomas E. Lilley; Arnold N. Miller; W.F. Roberts, Jr.; Joe W. Jernigan; and Miller, Roberts & Jernigan, Defendants–Appellees.**

**No. 17142.**

Court of Appeals of New Mexico.

Feb. 24, 1997.

Certiorari Denied April 3, 1997.

Cynthia J. Patterson, Law Offices of Cynthia J. Patterson, Albuquerque, Robert Dale Morrison, Law Offices of Robert Dale Morrison, Albuquerque, for Appellant.

Thomas L. Johnson, Foster, Johnson, Harris & McDonald, Albuquerque, for Appellees Thomas K. Campbell II and Thomas E. Lilley.

Jeffrey A. Dahl, Lamb, Metzgar, Lines & Dahl, P.A., Albuquerque, for Appellee Arnold N. Miller.

## OPINION

PICKARD, Judge.

1. This is a legal malpractice, breach of contract, and deceit action brought by a former criminal defendant (Plaintiff or Duncan) against the lawyers who defended him (Defendants). The issues we address concern the commencement of the statute of limitations in such actions. The district court granted Defendants' motion to dismiss because Plaintiff's action was not brought in a timely fashion. Except for a portion of the deceit action, we agree with the district court and hold that the ordinary rules governing the running of the statute of limitations apply to legal malpractice and related actions brought by former criminal defendants. We further hold that, to the extent that any different rules may apply to malpractice actions in the criminal area, those different rules do not necessarily impact the statute of limitations. Accordingly, we affirm the dismissal of the malpractice, breach of contract, and a portion of deceit counts of this case. We also reverse a portion of the deceit claim.

FACTS

■ 2. Defendants moved to dismiss based on their contention that the defense of statute of limitations was clearly apparent from the face of Plaintiff's complaint. *See Apodaca v. Unknown Heirs*, 98 N.M. 620, 623–24, 651 P.2d 1264, 1267–68 (1982). Under these circumstances, we accept as true all of the allegations of the complaint, from which we summarize the following recitation of the facts. *See Fernandez v. Char–Li–Jon, Inc.*, 119 N.M. 25, 26, 888 P.2d 471, 472 (Ct.App.), *cert. denied*, 119 N.M. 20, 888 P.2d 466 (1994).

3. Plaintiff was charged with and convicted of multiple counts of criminal sexual penetration and incest. Defendants were retained to represent him. Defendant Miller was the actual trial counsel. Other defendants included Miller's partners and law firm in Texas and local New Mexico counsel with whom he associated. The trial and conviction occurred in December 1985. At that time, Plaintiff knew that Defendants did not represent him to his satisfaction and, in particular, that there were alibi witnesses that were neither investigated nor presented. Plaintiff was sentenced to a prison term of twenty-five years. His conviction was affirmed on appeal in December 1986. In an unpublished opinion, this Court rejected Plaintiff's contention of ineffective assistance of counsel because the record did not contain any indication of whether the alibi defense was investigated or not; the record simply showed that no alibi defense was presented.

4. Plaintiff filed a habeas corpus proceeding in state district court in February 1989. An evidentiary hearing was held in February 1991. At the evidentiary hearing, Plaintiff first became aware that Defendants did not present the alibi defense because Defendant Miller did not properly give notice of the defense and he concealed that fact from Plaintiff because he wanted to avoid embarrassment to himself. A portion of the deceit count arises out of these facts, and it involves Defendant Miller only.

5. The district court granted habeas corpus relief in June 1991 based on Plaintiff's allegation of ineffective assistance of counsel. The State appealed the district court's order,

and the Supreme Court affirmed in February 1993. *See Duncan v. Kerby*, 115 N.M. 344, 851 P.2d 466 (1993). The order on the mandate granted Plaintiff a new trial in April 1993. For various reasons, the State chose not to retry Plaintiff, and he was released from prison. He filed his malpractice action in February 1994.

DISCUSSION

6. The issue we address is whether Plaintiff's malpractice, breach of contract, and deceit action accrued at the time Plaintiff knew or should have known of the facts constituting the basis for the claims or whether it did not accrue until Plaintiff was granted relief from his criminal convictions. Before discussing that specific issue, we set out the statutes of limitations applicable to this case; we set forth an issue that we do not decide; and we decide that one aspect of Plaintiff's deceit claim accrued within the applicable limitation period.

A. *The Statutes*

7. NMSA 1978, Section 37–1–1 (Repl. Pamp.1990) provides that "[t]he following suits or actions may be brought within the time hereinafter limited ... after their causes accrue...." Actions on unwritten contracts must be brought within four years. NMSA 1978, § 37–1–4 (Repl.Pamp.1990). Actions for relief on the ground of fraud and all actions not specified in the statutes on limitations also must be brought within four years. *Id.* Actions for injuries to the person must be brought within three years. NMSA 1978, § 37–1–8 (Repl.Pamp.1990).

B. *An Issue We Do Not Decide*

8. The parties dispute whether the statute of limitations for malpractice or breach of contract sounding in malpractice is the three-year limit of Section 37–1–8 or the four-year limit of Section 37–1–4. *Compare Brunacini v. Kavanagh*, 117 N.M. 122, 127 n. 2, 869 P.2d 821, 826 n. 2 (Ct.App.1993) (holding that four-year limit applies because New Mexico has no specific statute addressing legal malpractice), *cert. denied*, 117 N.M. 215, 870 P.2d 753 (1994) *with Mantz v. Follingstad*, 84 N.M. 473, 478–79, 505 P.2d 68, 73–74 (Ct.

App.1972) (holding that three-year limit applies to personal injury even if the cause of action is contractual in nature). We need not decide the parties' dispute about this issue because, as Duncan asserts in his complaint, he "knew from the time of the trial of the criminal case that Miller and Lilley had not adequately and properly represented him." We interpret this contention in the complaint to mean that Plaintiff knew enough at that time to allow accrual of the action and running of the statute of limitations under *Jaramillo v. Hood*, 93 N.M. 433, 601 P.2d 66 (1979) and *Sharts v. Natelson*, 118 N.M. 721, 885 P.2d 642 (1994). Except as to one aspect of the deceit claim, unless there is a special rule in malpractice cases arising out of criminal representation, Plaintiff's claim, filed more than eight years later, was untimely under either statute.

### C. *The Deceit Claim*

■ 9. A different result is required, however, with respect to one aspect of Plaintiff's deceit claim. The deceit claim has two major aspects. First, Plaintiff claims that Miller misrepresented that he was capable of trying criminal cases in New Mexico when he knew that he was not so capable. Second, Plaintiff claims that Miller was not aware of the New Mexico requirement of filing a notice of alibi defense until just prior to the trial in 1985, that Miller withheld from Plaintiff his knowledge of that requirement, and the reason Miller withheld such knowledge and did not seek to call the alibi witnesses was that he did not want to embarrass himself.

10. It is apparent from the face of the complaint that the first aspect of Plaintiff's deceit claim is identical to Plaintiff's malpractice and breach of contract claims. Plaintiff knew about them at the time of his initial criminal trial, and thus the statute of limitations would run on the deceit claim based on the same facts for the same reasons. It is not clear from the face of the complaint or from any other document tendered by Defendants into the record below when Plaintiff became aware of the second aspect of his deceit claim. A response filed by Plaintiff below indicates that he did not know about

this aspect of the deceit claim until the habeas corpus hearing in February 1991. The statute of limitations for deceit is four years. Section 37-1-4; *see Ledbetter v. Webb*, 103 N.M. 597, 602, 711 P.2d 874, 879 (1985) (equating fraud and deceit); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 88, 766 P.2d 928, 932 (Ct.App.1988) (holding that fraud may arise from omission when one is under a duty to speak). Plaintiff's 1994 complaint was filed within four years of 1991, and thus this aspect of the complaint was erroneously dismissed.

### D. *A Special Rule for Malpractice in Criminal Cases?*

■ 11. We next address Plaintiff's major issue. Plaintiff claims that a predicate to his recovery is the absence of conviction in the criminal case, sometimes referred to as "exoneration," "innocence," or "legal innocence." Because New Mexico follows a discovery rule in legal malpractice cases in which the statute of limitations does not begin to run until the client discovers a loss caused by the attorney's wrongful act or omission, *Sharts*, 118 N.M. at 724, 885 P.2d at 645, Plaintiff contended in his briefs, based on cases from some other jurisdictions, that until post-conviction relief is granted, he has not suffered a loss caused by his attorneys' actions and therefore could not have discovered a cause of action because he did not have one. At oral argument, Plaintiff abandoned this argument and suggested instead that lack of post-conviction relief implicated the causation element, rather than damages. Neither theory convinces us to adopt Plaintiff's position.

12. We explain the rule followed in other jurisdictions and express our preliminary doubts about its merits. We need not decide whether to adopt the rule here, however, because even if we were moved by some of the considerations underlying it, we hold that the rule followed in Michigan is more appropriate for New Mexico. *See Gebhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900, 907 (1994) (holding that even if there are reasons to follow a different substantive rule about legal malpractice in criminal cases, those reasons do not justify lengthening the

statute of limitations and would at most justify staying the civil malpractice case until the criminal proceedings were concluded).

### (1) The Rule in Some Other Jurisdictions

■ 13. The rule providing different substantive requirements in legal malpractice arising out of criminal cases than in malpractice arising out of civil cases appears to have had its genesis in a 1974 law review article: Otto M. Kaus & Ronald E. Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice,"* 21 U.C.L.A.L.Rev. 1191 (1974). Although the article was entitled "Reflections" and although its express purpose was to call attention to certain difficulties that might be present in malpractice arising in criminal cases, *id.* at 1231, several courts found the policy questions considered in the article to be persuasive reason to treat malpractice arising in criminal cases radically differently from malpractice arising in other areas. The article and these cases culminated in two cases that we believe are particularly thoughtfully, if not well, reasoned: *Shaw v. State, Dep't Of Admin. PDA* [*Shaw*], 816 P.2d 1358 (Alaska 1991), and *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556 (1993) (en banc).

14. The essence of these cases may be summed up as follows. Whereas in ordinary malpractice cases the plaintiffs need only show that the attorney did not meet the standard of care as a result of which the client suffered a worse result, in malpractice arising out of criminal cases, the plaintiff must show in addition that the plaintiff's predicament was not of the plaintiff's own making (or the defendant may defend by showing the opposite), as for example because the plaintiff really is guilty or that the plaintiff's guilt has not been overturned on appeal or in post-conviction proceedings. *See Shaw v. State* [*Shaw II*], 861 P.2d 566, 572 (Alaska 1993) (holding that although majority of courts place burden on plaintiff to show innocence, Alaska would place burden on defendant to show plaintiff's actual guilt). There are many reasons for courts' adoption of this different rule, all of which are said to be based on sound public policy. We briefly list the reasons, followed by what we believe

to be the countervailing policy, at least as that policy bears on statutes of limitations.

15. When dealing with statutes of limitations, we must remember first that we are dealing with legislatively imposed restrictions and second that those restrictions were enacted for particular reasons. "The underlying purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the party against whom the action is brought will have a fair opportunity to defend." *Moncor Trust Co. v. Feil,* 105 N.M. 444, 446, 733 P.2d 1327, 1329 (Ct.App.), *cert. denied,* 105 N.M. 421, 733 P.2d 869 (1987). Although discussing a statute of repose as well as a limitation on actions, our Supreme Court in *Roberts v. Southwest Community Health Services,* 114 N.M. 248, 256, 837 P.2d 442, 450 (1992), set out some of the important policies served by statutes of limitations. In addition to basic fairness to defendants, such statutes help avoid stale or fraudulent claims, avoid inconvenience, and avoid loss of evidence. *Id.*

16. The *Shaw* court noted that court resources would be conserved if plaintiffs were required to obtain post-conviction relief because decisions adverse to the plaintiffs would have collateral-estoppel effect on their malpractice actions. *Id.* Under New Mexico law, collateral estoppel would apply only to issues actually and necessarily decided that are then relevant in the new action. *See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct.App.), *cert. denied,* 115 N.M. 60, 846 P.2d 1069 (1993). Thus, an adverse decision on an ineffective assistance of counsel claim may be a bar, but an adverse decision on another issue would not appear to be relevant to the issues in a legal malpractice action under ordinary civil rules.

17. Moreover, an adverse decision on an ineffective assistance of counsel issue may not be a bar. In Plaintiff's case, on appeal, this Court did not rule on the merits of the ineffective assistance claim; it ruled only that the contention was not supported by the record made in the criminal case. Collateral estoppel does not apply unless there is a full and fair opportunity to litigate the issue in prior proceedings. *Id.* The appeal in Plain-

tiff's habeas corpus case established that appellate review may not give a full and fair opportunity to litigate an ineffective assistance of counsel claim. *Duncan,* 115 N.M. at 346–47, 851 P.2d at 468–69. In addition, we are unaware of any collateral-estoppel doctrine that requires a litigant to file and litigate one case so that it can be used as a bar to another case.

18. The *Shaw* court next noted the litigious nature of incarcerated persons. *Shaw,* 816 P.2d at 1361. We do not believe that generalizations about certain litigants ought to create insuperable barriers to the filing and litigation of meritorious claims. This concern appears to us to express unwarranted favoritism for attorneys as a class of litigants. To the extent that other states have viewed the obligation of the state or the private bar, as the case may be, to represent indigent, criminal defendants as a reason to treat criminal and civil malpractice cases differently, that reason would have no application in New Mexico, where public defenders or their contract attorneys representing indigent defendants are statutorily immune from malpractice liability. *See Coyazo v. State,* 120 N.M. 47, 53, 897 P.2d 234, 240 (Ct.App. 1995).

19. The *Shaw* court also noted two concerns favoring the plaintiff in criminal malpractice actions—(1) that we do not want to burden the plaintiff with the possibility that the defending attorney might reveal privileged information or other information that would help the prosecution in the criminal case and (2) that we do not want to burden the plaintiff in the malpractice action with diverting attention from the post-conviction proceedings. *Id.* at 1361. Regarding the first concern, it would appear fairer to all concerned, as well as to public confidence in the administration of both criminal and civil justice, to require the plaintiff to make the choice. If plaintiffs want to recover money damages from their attorneys, perhaps it is not unfair to them to allow whatever is discovered in the civil suit to be fair game in either the criminal or civil litigation. As to both concerns, it would appear that placing barriers in the way to plaintiffs' recovery is

hardly the way to be solicitous of those plaintiffs' rights.

20. Finally, the *Shaw* court noted the desirability of creating a bright line rule that is easy to apply. *Id.* We acknowledge that starting the running of the statute at the granting of post-conviction relief would create a brighter line than permitting litigation about when a claim is discovered. However, we would then need to decide when post-conviction relief is deemed granted, which would present its own set of problems because the possibilities are endless. For example, is it the district court decision or decision on appeal? Is it the oral or written ruling? More importantly, whatever date we selected as the "bright line" could be far in the future in particular cases, thus subverting the goals of statutes of limitations.

21. The *Stevens* court mentioned a number of these same considerations. *Stevens,* 851 P.2d at 563–64. The Oregon court was most persuaded, however, by the following reasoning. First, although it was dealing with statutes of limitations, the statutes depended on the common law definition of the contours of the tort of malpractice. Thus, it was the court's duty to define what constitutes the tort, and policy plays an important part in that duty. *Id.* at 560. Second, the comprehensive nature of the criminal justice system and the difficulty of obtaining convictions made it inappropriate to permit a convicted person to assert a claim for malpractice in the courts. The constitutional and procedural protections afforded by the system argue strongly in favor of treating a conviction as valid until it is overturned. *Id.* at 561–62. Third, a criminal defendant whose attorney did not meet the standard of care has other avenues for redress. *Id.* at 565. Finally, the court expressed a "visceral reaction" that was first noted by Kaus and Mallen, *see* 21 U.C.L.A.L.Rev., *supra,* at 1200–03. The court said, "we simply disagree that such civil legal actions should be possible" for guilty criminal defendants who are claiming they should have gotten a "better deal." *Stevens,* 851 P.2d at 565.

22. It appears to us, as it appeared to the specially concurring justices in *Stevens,* that most of these policy considerations create

legal fictions, too divorced from reality to serve as the basis for the adoption of a specialized substantive rule or a different concept of accrual for statute of limitation purposes. *Id.* at 566 (Unis, J., specially concurring). In particular, the idea that defendants convicted and serving time because of their attorneys' malpractice are not legally harmed until they are exonerated and released would surprise not only those defendants, but any person whose thought processes are guided by common sense. *Id.* In addition, we tend to agree with Justice Unis that the rule extending the statute of limitations until the plaintiff's exoneration in the criminal case is contrary to the policies behind statutes of limitation, contains many analytical flaws, and is amorphous and hard to apply. *Id.* at 570–79.

#### (2) *The Appropriate Rule for New Mexico*

23. Accordingly, we would hesitate to follow Plaintiff's contention and adopt it as the law in New Mexico. In this case, however, we need not fully decide whether to adopt it or not. That is because, even if we were moved by Plaintiff's concerns, which concerns led the Alaska, Oregon, and other courts to adopt their rules concerning the statutes of limitations, we do not believe that the appropriate response to those concerns would be to potentially indefinitely toll the statute of limitations. It must be remembered that criminal defendants have no time limits on habeas corpus relief in New Mexico. *See* NMRA 1997, 5–802. In fact, Plaintiff in this case waited more than two years after his conviction was affirmed to file his habeas petition. In this connection, we agree with the Michigan court that the legislative policies underlying statutes of limitations, which courts are bound to uphold, suggest that neither the statutes of limitations nor the elements of the tort of malpractice should be altered to satisfy other policy concerns. *Gebhardt,* 510 N.W.2d at 907. Rather, Plaintiff's concerns may be accommodated by recognizing that there may be two tracks, one civil and one criminal, arising out of malpractice committed in criminal cases. In appropriate cases, the civil track may be stayed while the criminal track is pursued. *Id.* The utilization of this "two track" approach was viewed as providing the best balance between the competing concerns of fairness to the criminal defendant and allowing the attorney a fair opportunity to defend. *Id.*

24. Moreover, this two-track system would seem most consistent with our Supreme Court's decision in *Sharts,* which this Court recently followed in *LaMure v. Peters,* 122 N.M. 367, 924 P.2d 1379 (Ct.App.), *cert. denied,* 122 N.M. 279, 923 P.2d 1164 (1996). Both of those cases were based strongly on the policy that the statutes of limitations should not be extended beyond the time necessary for fairness to the plaintiff. In both cases, the plaintiffs contended that, although they had reason to know of professional malpractice by their lawyer and accountant respectively, the statute of limitations should not begin running until the professionals had concluded any litigation attempting to resolve the problems caused by the malpractice. The plaintiffs' contentions were rejected. *Sharts,* 118 N.M. at 725, 885 P.2d at 646, *LaMure,* 122 N.M. at 371, 924 P.2d at 1383. Just as the outcome of other litigation was not considered relevant in *Sharts* and *LaMure,* we do not believe that the outcome of other litigation should be relevant to the starting of the statute of limitations here.

25. The "two track" approach ... recognizes that a criminal defendant who has initiated postconviction relief proceedings should have knowledge sufficient to have discovered his claim against his initial defense attorney for statute of limitation purposes. In order to put the defense attorney on notice that he will have to defend against a malpractice claim, and thereby honor the policies underlying the statute of limitations, the criminal defendant must file his malpractice complaint within the limitations period.

*Gebhardt,* 510 N.W.2d at 907; *see also Sharts,* 118 N.M. at 724, 885 P.2d at 645 (the limitations period for legal malpractice commences when (1) the client sustains actual injury and (2) the client discovers, or with reasonable diligence should discover, the facts essential to the cause of action). With the claim preserved, the plaintiff may and perhaps should seek a stay in the civil suit until the criminal case is resolved. The trial

court handling the civil suit would have discretion regarding imposition of a stay, keeping in mind the nature of the basis asserted for post-conviction relief. *See Gebhardt,* 510 N.W.2d at 907; *Seevers v. Potter,* 248 Neb. 621, 537 N.W.2d 505, 511 (1995) (adopting *Gebhardt* rule).

26. Plaintiff claims that adopting the *Gebhardt* rule would be wrong for New Mexico because it was based, both in Michigan and elsewhere, *see Seevers,* 537 N.W.2d at 511, on an occurrence rule for limitation of actions, which New Mexico does not follow. However, both Michigan and Nebraska have provisions extending their statutes of limitations (albeit not for their full length) when the malpractice is not discovered. *See Gebhardt,* 510 N.W.2d at 903; *Seevers,* 537 N.W.2d at 511. Thus, analytically, our rules are the same as in Michigan and Nebraska.

CONCLUSION

27. The district court's dismissal of Plaintiff's action is affirmed in all respects except for the dismissal of the deceit count against Defendant Miller to the extent that the deceit alleged is Miller's concealment of the requirement of filing notice of alibi and the resultant failure to investigate and present an alibi defense. In light of this disposition, we need not consider Plaintiff's other issue.

28. IT IS SO ORDERED.

FLORES and BUSTAMANTE, JJ., concur.