724 So.2d 1192 (1998)
William Stewart STEELE, Appellant,
v.
Terrence E. KEHOE, Appellee.
No. 96-2212.
District Court of Appeal of Florida, Fifth District.
March 20, 1998.
William Stewart Steele, Daytona Beach, pro se.
Steven G. Mason, Law Offices of Steven G. Mason, Orlando, for Appellee.
*1193 HARRIS, J.
William Stewart Steele was convicted of the first degree murder of Andrew Salter, Jr. in 1991 and was sentenced to life in prison. He has spent much of his incarceration seeking review in one form or another. He has consistently claimed that his private attorney, the lawyer who represented him in his appeal, negligently failed to timely file a 3.850 motion on his behalf even though the attorney orally agreed to do so. Steele's attempts to file his own motion outside the time period have consistently been denied by the trial court and by this court because of the two-year filing restraint. Frankly, we did not consider a due process problem inherent in this situation. We were wrong.
Because Steele was unable to have his 3.850 motion heard, he sued his lawyer for malpractice. The trial court dismissed his complaint since Steele, because his 3.850 motion was jurisdictionally barred, was unable to prove that he was improperly convicted. Indeed, in those states that have considered the issue, it appears to be the majority view that exoneration is a prerequisite to a legal malpractice action arising from a criminal prosecution. Certainly there is logical support for this holding.[1] First, criminal procedure provides a remedy for ineffective assistance of counsel. Judicial economy will be best served if we permit the criminal court to determine the issue of ineffective assistance of counsel. If the court should determine that the attorney's representation, even if sub-par, did not affect the result of the criminal trial then a subsequent malpractice action should not lie. Second, public policy should recognize that unless a defendant is exonerated, the proximate cause of the defendant's conviction is his or her commission of a crime and not legal malpractice. Third, and most important, unless exoneration is accomplished, a legal malpractice action would be an inadequate remedy.
Under the facts of this case, the requirement of exoneration places Steele in a Catch 22 situation. Steele cannot sue his lawyer for malpractice because of the consequence of the alleged malpractice. Justice requires that some relief be provided. Therefore, the real issue before us now is what due process rights a convicted defendant has in post-conviction matters when he relies on his attorney to pursue remedies designed to prove his innocence and to obtain his freedom and the attorney fails to file within the limitation period. Such a situation highlights the inadequacy of a malpractice action when exoneration is not required. Should a criminal defendant who loses his opportunity to gain freedom and to restore his good name because of the malpractice of his lawyer be limited to civil damages? An award of money damages is an acceptable substitutionary remedy only because the law knows of no other remedy that will make the injured party whole. Money damages would never be awarded for a lost arm if the law could replace the arm. In a case such as the one before us, although money damages would be appropriate to compensate the victim for having been improperly incarcerated before the error was rectified, public policy should not recognize such damages as a substitute for an innocent person's future incarceration. It would truly be an anomaly if the civil jury awarded Steele $100,000 a year for the years that he had to remain in prison while the taxpayers of this state are required to pay the cost of incarceration for one improperly convicted. If a defendant can prove that he was improperly convicted, he should be set free. If he is denied the opportunity *1194 to offer such proof because of the malpractice of his lawyer, fundamental due process requires that he have a remedy that will address his future incarceration and not merely compensate him for improperly staying in prison.
In Lambrix v. State, 698 So.2d 247 (Fla. 1996), a case involving a claim that post-conviction counsel was ineffective in not appealing the trial judge's denial of Lambrix's request to represent himself in his original motion for post-conviction relief, our supreme court held that claims of ineffective assistance of post-conviction counsel do not present a valid basis for relief under rule 3.850.[2] But the court did not consider an issue such as the one before us. The Lambrix holding, since Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) was cited as authority, seems to be based on the proposition that because one is not entitled to appointed counsel in post-conviction matters, he has no right to relief if counsel is in fact appointed for him or if he obtains his own counsel and suffers a disadvantage because of his counsel's incompetence. But this ignores the difference between the right to appointed counsel and the right to counsel.[3] Even if a defendant is not necessarily entitled to appointed counsel, still if one is appointed for him or if he is able to obtain his own, he should be able to rely on such counsel's at least filing within the time period.
The reason that no attorney is required in post-conviction matters, according to Justice O'Connor's concurring opinion in Murray, is that post-conviction proceedings are civil in nature and are not a part of the criminal process itself. But, as Justice O'Connor observed, it is a civil action designed to overturn a presumptively valid criminal judgment. Therefore she suggests that the states should be given considerable discretion in assuring that those imprisoned in their jails obtain meaningful access to the judicial process.[4] Access that will permit only money damages for unjustified future incarceration is simply not meaningful. If a prisoner is denied the opportunity to challenge his conviction under an appropriate rule only because of the negligence of his attorney, then due process requires a belated filing procedure similar to that allowed in belated appeals.[5] The sole issue in such a case would be whether counsel was, in fact, employed for the purpose of filing a post-conviction motion but failed to do so in a timely manner. If so, then, as in a belated appeal, the motion should be heard.
Obviously, if a 3.850 motion which would have proved that Mr. Steele was wrongfully convicted was not timely filed, then he has been disadvantaged by ineffective assistance of counsel. However, there would be no ineffective assistance of counsel in not filing the motion if it would have been unsuccessful in any event. The question is whether we should require that the validity of the claims in the 3.850 motion be determined by the criminal trial court (if possible, the same *1195 judge that heard the case) by way of a belated hearing on the motion, or if we should relegate that obligation to a civil trial jury. If we leave the issue to a civil jury, not only will there be a due process concern because a civil jury's decision will have no effect on the defendant's continuing incarceration, but judicial economy, convenience and consistency will also suffer.
We recognize that should the supreme court agree with our position the effectiveness of the two year limitation applicable to 3.850 motions when attorneys are involved will be brought into question. However, few 3.850 motions are filed by attorneys. Further, should an attorney abuse the 3.850 process by not filing or improperly filing such motion in order to extend the time for consideration, severe penalties should follow.
We affirm the dismissal of the civil action. Were it not for Lambrix, we would remand the case to the trial court with instructions to transfer it to the criminal division for a hearing on whether Mr. Kehoe undertook to represent Mr. Steele in the post-conviction process and, if he did, to hold a belated hearing on the claims in Mr. Steele's 3.850 motion. If Mr. Steele were able to show at such hearing that he was improperly convicted, then not only should his conviction be set aside but he would also have a civil claim for damages against Mr. Kehoe. If Mr. Steele were unable to show that Mr. Kehoe agreed to represent him or that his conviction should be set aside, then not only should he remain in prison but his civil action against Mr. Kehoe would be barred.
Because of the importance of this issue, we stay the mandate herein and certify the following issue to the supreme court:
UNDER THE FACTS OF THIS CASE, IS IT APPROPRIATE TO ORDER A BELATED HEARING IN ORDER TO DETERMINE WHETHER THE ATTORNEY WAS IN FACT RETAINED TO FILE A POST-CONVICTION MOTION AND, IF SO, TO DETERMINE THE VALIDITY OF THE ISSUES THAT DEFENDANT ASSERTS SHOULD HAVE BEEN RAISED IN SUCH MOTION?
W. SHARP, J., concurs and concurs specially, with opinion.
GRIFFIN, C.J., dissents with opinion.
W. SHARP, Judge, concurring specially.
I concur with Judge Harris' majority opinion. It appears to me to be both impractical and unrealistic to relegate a convicted defendant solely to a civil malpractice suit against his attorney if that attorney (as we must assume in this case) wrongfully failed to file a timely motion for post-conviction relief on that defendant's behalf, thereby causing the defendant to be barred from seeking collateral relief. What price can be put on one's freedom for one day, much less years? How, in a civil court, can a convicted defendant prove to a jury that he or she would have been able to overturn a conviction, had the collateral attack been timely filed? The difficulties are manifold.
Both the United States Supreme Court and the Florida Supreme Court have held that there is no Sixth Amendment right to an attorney in state post-conviction proceedings. See Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); State v. Weeks, 166 So.2d 892 (Fla.1964). This is so because post-conviction proceedings are considered to be civil in nature and do not constitute steps in a criminal prosecution within the contemplation of the Sixth Amendment. Weeks, 166 So.2d at 895. Since there is no constitutional right to counsel, there can be no claim of ineffective assistance of counsel. See Coleman, 501 U.S. at 752, 111 S.Ct. at 2566; Lambrix v. State, 698 So.2d 247 (Fla.1996).
Rather, post-conviction proceedings are governed by the more flexible standards of the due process guarantee of the constitution. See Weeks, 166 So.2d at 895. For example, due process may require the appointment of counsel in post-conviction proceedings if the motion presents an apparently meritorious claim for relief and the hearing is potentially so complex as to suggest the need for counsel. Weeks.
In the present case, Steele may not have had a Sixth Amendment right to counsel to pursue his post-conviction motions. Nonetheless, according to Steele, his counsel had *1196 agreed to file these proceedings and failed to do so within the applicable time limits. Thus, Steele's intent to file timely post-conviction proceedings was frustrated by the actions of his attorney. In these circumstances, Steele would appear entitled under due process to petition for a writ of habeas corpus[1] to address this issue. See Ward v. Dugger, 508 So.2d 778 (Fla. 1st DCA 1987).
In Ward v. Dugger, Sharon Ward was convicted of second degree murder and her conviction was affirmed on appeal. Several years later, Ward sent a letter to the appellate court stating that she had planned to file a motion for post-conviction relief but her privately-retained attorney had been uncooperative with her in providing the records that would have been necessary in drafting her motion. Ward also believed that she was now barred by the two-year time limitation in rule 3.850 from pursuing this motion. The letter was brought to the attention of a panel of the judges, who concluded that Ward might be entitled to file a belated motion for post-conviction relief if the actions of her attorney had frustrated her intention to file such a motion in a timely fashion. Ward's letter was thus construed as a petition for writ of habeas corpus. (The court, however, dismissed the petition, finding that the two-year limitation of rule 3.850 had not yet expired).
Like Ward, the present case involves a privately-retained counsel who allegedly thwarted the defendant's attempt at post-conviction relief. While it is often stated that habeas corpus is not a substitute for post-conviction relief under rule 3.850, see, e.g., Leichtman v. Singletary, 674 So.2d 889 (Fla. 4th DCA 1996), the rule did not replace habeas corpusit simply provided a remedy co-equal with post-conviction habeas corpus. State v. Weeks, 166 So.2d at 893. In fact, the use of habeas corpus in this situation is supported, if not authorized, by rule 3.850(h):
(h) Habeas Corpus. An application for writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this rule shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court that sentenced the applicant or that the court has denied the applicant relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of the applicant's detention. (emphasis supplied)
Presumably, Steele is authorized to apply for relief under this rule. Since the expiration of the rule's time limits is the very basis for Steele's claim, there can be no remedy for him by motion under the rule.
Habeas corpus is now available for belated appeals and for relief based on allegations of ineffective assistance of counsel. See Fla. R.App. P. 9.140(j); State v. District Court of Appeal of Florida, First District, 569 So.2d 439 (Fla.1990) (rule 3.850 is intended to prohibit courts from entertaining habeas corpus petitions raising issues cognizable under the ruleclaims of ineffective assistance of appellate counsel shall continue to be raised by petition for habeas corpus filed in the appellate court); McLeroy v. State, 704 So.2d 151 (Fla. 5th DCA 1997) (to the extent that the defendant's petition for habeas corpus may be considered as a request for belated appeal, the defendant should file this petition with the appropriate district court of appeal); Leath v. State, 694 So.2d 855 (Fla. 4th DCA 1997) (appellant's appeal from the denial of his 3.850 motion for belated appeal was treated as a petition seeking habeas corpus relief under rule 9.140(j)).
Habeas corpus has even been extended to those seeking belated appeal in termination of parental rights cases. See In the Interest of E.H., 609 So.2d 1289 (Fla.1992); In the Interest of T.D., 623 So.2d 851 (Fla. 1st DCA 1993). This is based on the significant policy *1197 interest in insuring that a parent and child were not separated without a thorough review of the merits of the case. Because of this policy interest, the court refused to impute the attorney's mistake in failing to timely file the appeal to the parent. See In the Interest of E.H., 609 So.2d at 1290.
Lambrix v. State, 698 So.2d 247 (Fla.1996) is distinguishable and thus does not foreclose habeas corpus relief. In that case, Lambrix requested that he be allowed to represent himself in his initial motion for post-conviction relief. Apparently this request was denied. Lambrix appealed but did not raise this issue. Later, Lambrix sought permission to file a new original motion for post-conviction relief, claiming that he was deprived of his right to represent himself in the initial motion. The supreme court found that Lambrix's claims were procedurally barred. Unlike the present case, Lambrix had an opportunity to file a motion for post-conviction relief. In contrast, Steele's counsel frustrated his intention to file post-conviction relief proceedings.
Because habeas corpus relief is based on due process considerations, whether counsel is appointed or privately retained should not be an issue. Initially, belated appeals due to the actions of court-appointed attorneys were permitted on the basis that the defendants had been prejudiced by "state action." However, in State v. Meyer, 430 So.2d 440 (Fla. 1983), the Florida Supreme Court held that the actions of a court-appointed attorney do not constitute state action. Nonetheless, this did not foreclose appellate review for a client whose attorney who had failed to file a notice of appeal because:
A collateral attack raising the issue of ineffective assistance of counsel is open to the indigent and the non-indigent on the same terms. The ends of justice will be better served when all who seek justice may seek it by the same paths.
State v. Meyer, 430 So.2d at 443. Thus whether counsel is appointed or retained does not matterthe only consideration is the due process rights of the defendant.
GRIFFIN, C.J., dissenting.
Although I agree with the majority that the most sensible remedy for a privately retained counsel's failure to file a Rule 3.850 motion within the two-year deadline (where he has agreed to do so) is for the trial court simply to hear the motion, I am confident that constitutional due process guarantees do not require it. If it is done, it has to be by rule.
The question we face in this case is whether a convicted criminal may sue his lawyer for malpractice where the lawyer agrees to file a timely Rule 3.850 motion for collateral relief but fails to do so. The majority concludes that no cause of action exists because the law provides him a more perfect remedythe right to have the trial court hear the 3.850 motion belatedly. As I understand it, this right to belatedly file a 3.850 motion in the trial court is secured by notions of due process. It would seem, however, that the Florida supreme court's decision in Graham v. State, 372 So.2d 1363 (Fla.1979) would dispose of that argument. In Graham the court reaffirmed its statement in State v. Weeks, 166 So.2d 892, 896 (Fla.1964) that due process is implicated in a post-conviction proceeding only if the post-conviction motion presents an apparently substantial meritorious claim for relief and if the hearing on the motion is potentially so complex to suggest the need for counsel. Id. at 1365. In Graham, the court took pains expressly to hold that:
[T]here is no constitutional requirement for the appointment of individual counsel for an application for post-conviction relief until a colorable or justiciable issue or meritorious grievance prima facie appears in the appellant's petition.
Id. Because no due process right to counsel arises until after the civil post-conviction proceeding is commenced and it is determined to meet the Weeks/Graham test for merit and complexity, it is inconceivable that a constitutional due process remedy exists for privately retained counsel's failure to file the motion.
The notion of a "due process" right to counsel appears to have arisen earlier this century because of the uncertain application of the Sixth Amendment right to counsel. United States v. Nevarez-Diaz, 648 F.Supp. 1226, 1230 (N.D.Ind.1986). In Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 *1198 (1932), the United States Supreme Court first identified this due process right to counsel and found it applicable in a situation where an accused criminal defendant was demonstrably incapable of defending himself. This due process basis for a right to counsel lost popularity with the courts after Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) was decided. Nevarez-Diaz at 1230. Weeks was decided very shortly after Gideon. The Florida supreme court was faced with deciding whether the rule of Gideon applied to post-conviction proceedings. The court rejected a Gideon -based entitlement approach in favor of the more narrow "due process" standard.
Fifth Amendment due process would require such assistance if the post-conviction motion presents apparently substantial meritorious claims for relief and if the allowed hearing is potentially so complex as to suggest a need.
Weeks, 166 So.2d at 897. None of this suggests that there is a due process component applicable to the mere filing of a Rule 3.850 motion. The fact that Steele's privately retained lawyer may have failed to carry out a commitment to file the motion has no due process aspect that I can find.
Apart from the fact that I do not believe that due process affords a remedy for private counsel's failure to file a timely 3.850 motion, I also do not believe that the rule announced by the majority can be confined to this limited circumstance. For example, the concurring opinion suggests that Steele has a habeas corpus remedy pursuant to Rule 3.850(h), because the 3.850 motion filed by Steele was untimely and therefore the 3.850 motion was "inadequate" or "ineffective." Surely, the exception provided for in Rule 3.850(h) means that habeas is available if 3.850 would not provide an adequate or effective remedy, not that the motion would be inadequate or ineffective because it wasn't timely filed. If habeas is available where the 3.850 was "ineffective" because untimely, then all tardy 3.850's are eligible to be filed as habeas. There is no basis to distinguish between 3.850 motions that are "inadequate or ineffective" because of an omission of counsel as opposed to an omission of the prisoner himself. Whether the omission to timely file was counsel's or the prisoner's own error, the "inadequateness" or "ineffectiveness" of the motion would be the same. Moreover, if private counsel's failure to timely file a 3.850 civil proceeding implicates due process, why is a civil litigant not equally deprived of due process if the same lawyer neglects to timely file a different civil claim?
Finally, there is Lambrix v. State, 698 So.2d 247 (Fla.1996), cert. denied, ___ U.S. ___, 118 S.Ct. 1064, 140 L.Ed.2d 125 (1998). In that case, a convicted prisoner under sentence of death sought post-conviction relief based upon his collateral counsel's failure to appeal a particular issue. The supreme court said that "claims of ineffective assistance of post-conviction counsel do not present a valid basis for relief." Id. at 248. It is difficult to see how post-conviction counsel's failure to raise an issue on appeal is not cognizable in a post-conviction proceeding but the failure to file the appeal itself would be. Given the analysis in Weeks and Graham, it would seem the reverse would be true.
The majority's discussion of the impropriety of a civil action for legal malpractice where the defendant has not been exonerated is as far as the briefs go in arguing this case on appeal. In deciding this case, we have had to go beyond Mr. Kehoe's exoneration argument because the cases upon which Mr. Kehoe relies requiring exoneration are all cases concerning alleged malpractice at trial or on appeal. The cases are also all predicated on the notion that exoneration can be accomplished through the procedural vehicle of post-conviction relief. These cases logically do not apply in a case like this where the malpractice claimed is the very failure to timely file a motion for post-conviction relief, resulting in the loss of that remedy.
Mr. Kehoe's contention that the complaint was properly dismissed because Mr. Steele neither alleged nor could establish that he had been exonerated of the crime of which he was convicted is predicated on a line of cases which represents the rule in several jurisdictions. The two cases principally relied on by Mr. Kehoe are a 1993 decision of the Texas court of appeals, Peeler v. Hughes & Luce, 868 S.W.2d 823 (Tex.Ct.App.1993), affirmed, 909 S.W.2d 494 (Tex.1995), and the even *1199 more widely cited and discussed case of Stevens v. Bispham, 316 Or. 221, 851 P.2d 556 (1993). Various rationales are put forth in these cases for a rule prohibiting convicted criminals from suing their counsel until they have been exonerated. First is the public policy argument that his commission of a criminal act is the sole proximate cause of the defendant's conviction and incarceration, not the malpractice of his criminal attorney.[1] This is often recognized as a "public policy" argument since it is obvious that a guilty criminal defendant could be prejudiced by a criminal defense lawyer's negligence. As one New Mexico court recently observed, the cases that have adopted this rule of exoneration in malpractice cases involving criminal cases are "thoughtfully, if not well, reasoned." Duncan v. Campbell, 123 N.M. 181, 936 P.2d 863, 866 (Ct.App.), cert. denied, 123 N.M. 168, 936 P.2d 337 (1997). In another recent decision rejecting this line of authority, the court of appeals of Indiana in Silvers v. Brodeur, 682 N.E.2d 811 (Ind.Ct.App. 1997), reviewed the various authorities and largely rejected the reasoning underlying such an "actual innocence" requirement for maintenance of a legal malpractice claim.
The more compelling reason for a rule of exoneration is that, in light of the broad panoply of protections afforded criminal defendants, considerations of judicial economy and public policy favor requiring a criminal defendant to obtain relief for any ineffectiveness of his counsel through the various appellate, post-conviction and habeas corpus remedies available.
It is interesting to note that many of the cases where courts have not found exoneration to be a required element of a malpractice action are cases where the criminal defendant failed to press his claim within the specified period of limitation after the commission of malpractice. In these cases, courts often rule that the cause of action for malpractice accrued at the moment the criminal defendant had notice of the malpractice. Conversely, in cases where the claim has been filed timely, courts often conclude that no claim can exist until the defendant has been exonerated. In Martin v. Pafford, 583 So.2d 736 (Fla. 1st DCA 1991), the court rejected the notion that a cause of action for legal malpractice did not accrue until the plaintiff had obtained relief from her conviction. The court said:
[T]he redressable harm occurred when claimant was convicted, sent to prison and her appeal was affirmed. The redressable harm did not occur when appellant's conviction was reversed as a result of her post-conviction proceeding.
Martin's claim of malpractice was not dependent upon appellate reversal of her conviction. Martin was not required to have succeeded in obtaining collateral relief from her criminal conviction before she could civilly sue her attorney for malpractice. If she had not even filed a post-conviction proceeding, she would still have been entitled to bring her civil suit for malpractice. Therefore, there is no basis for Martin's claim that she had to await termination of the appellate process following her post-conviction proceeding before she could file suit.
583 So.2d at 738.
Mr. Kehoe distinguishes Martin v. Pafford on the basis that the issue in Martin was whether the applicable statute of limitations had run, not whether Martin had to prove her conviction had been set aside or that she was innocent as a prerequisite to suing her counsel. Martin v. Pafford is not so easily dismissed, however, because the trigger for the statute of limitations is the accrual of the cause of action. In fact, one of the two cases on which Mr. Kehoe principally relies, Stevens v. Bispham, was a case, like Martin v. Pafford, where the issue before the court was the trigger for the statute of limitations. No state whose jurisprudence requires exoneration as an element of the cause of action permits the statute of limitations to begin running at the time the defendant first had notice that the malpractice occurred.
In the context of appeals, convicted criminals who have been deprived by counsel's negligence of the right to collaterally attack their judgment through the procedure provided in Florida Rule of Appellate Procedure 3.850 have been allowed a belated filing. Jones v. State, 642 So.2d 121 (Fla. 5th DCA *1200 1994); McLeod v. State, 586 So.2d 1351 (Fla. 5th DCA 1991). This was done, however, in ignorance of the principles mentioned in Lambrix. If the supreme court were to allow belated 3.850 filings by rule, the problems presented in Jones, McLeod, and in this case would be resolved. The motion would be disposed of on the merits. Once a convicted criminal who seeks post-conviction relief complaining of counsel's negligence is denied relief, he will not be heard again in a civil suit for malpractice. Zeidwig v. Ward, 548 So.2d 209 (Fla.1989).
NOTES
[1] The dissent cites Duncan v. Campbell, 123 N.M. 181, 936 P.2d 863 (Ct.App.), cert. denied 123 N.M. 168, 936 P.2d 337 (1997), as criticizing the cases that have adopted the rule of exoneration as "thoughtfully, if not well, reasoned." Actually Duncan only criticizes two casesone from Alaska and the other from Oregon. Neither of these cases discusses civilly compensating defendants who must stay in prison because of their counsel's incompetence. And Duncan, although it expressed some doubts about the rule of exoneration, did not reject the rule. "We need not decide whether to adopt the rule here, however, because even if we were moved by some of the considerations underlying it, we hold that the rule followed in Michigan is more appropriate for New Mexico. See Gebhardt v. O'Rourke [, 444 Mich 535, 510 N.W.2d 900, 907 (1994)] [citation omitted](holding that even if there are reasons to follow a different substantive rule about legal malpractice in criminal cases, those reasons do not justify lengthening the statute of limitations and would at most justify staying the civil malpractice case until the criminal proceedings were concluded)." 936 P.2d at 865-66.
[2] Another reason for denying relief was that Lambrix had actually raised the claim before and had it denied and therefore his present motion was successive.
[3] The dissent continues to miss this distinction. We are not suggesting that due process requires the appointment of an attorney in all 3.850 cases. We are suggesting that a defendant has the right in all 3.850 cases to employ counsel if one is not appointed. The presence of counsel, appointed or employed, carries with it certain rights and restrictions. The primary right is that one experienced in the law acts in the defendant's stead. The most notable restriction is that if counsel is present, the defendant may not act for himself without court approval. State v. Tait, 387 So.2d 338 (Fla.1980). There are certain basic rights of the defendant that cannot be waived by the lawyer. See U.S. v. Teague, 953 F.2d 1525 (11th Cir.1992) (a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial and this right is personal to the defendant and cannot be waived either by the trial court or by defense counsel). The right to be heard on a 3.850 motion should not be lost because of late filing when one employs counsel to file the motion and finds out too late that counsel has not done so.
[4] It is the defendant's right to have meaningful access to the judicial process that we urge is a due process right. If the defendant is denied the right to attack a presumptively valid criminal judgment because of counsel error and is instead limited to money damages because of an invalid conviction, he has been denied due process.
[5] Judge Sharp makes a good argument that habeas corpus might be appropriate in this situation. I am not concerned with a specific remedy, but only that some remedy is available to address this problem.
[1] Section 79.01 Application and writ:

When any person detained in custody, whether charged with a criminal offense or not, applies to the Supreme Court or any justice thereof, or to any district court of appeal or any judge thereof or to any circuit judge for a writ of habeas corpus and shows by affidavit or evidence probable cause to believe that he or she is detained without lawful authority, the court, justice, or judge to whom such application is made shall grant the writ forthwith, against the person in whose custody the applicant is detained and returnable immediately before any of the courts, justices, or judges as the writ directs.
[1] Orr v. Black & Furci, P.A., 876 F.Supp. 1270, 1276 (M.D.Fla.1995).