885 P.2d 642

**Wallace G. SHARTS and Stakeout Properties, Inc., Plaintiffs–Respondents,**

v.

**Stephen NATELSON and Natelson & Ross, Defendants–Petitioners.**

No. 21404.

Supreme Court of New Mexico.

Oct. 26, 1994.

---

Rodey, Dickason, Sloan, Akin & Robb, P.A., Joseph J. Mullins and Charles K. Purcell, Albuquerque, for petitioners.

Bosson & Canepa, P.A., Richard C. Bosson, Santa Fe, for respondents.

## OPINION

MONTGOMERY, Justice.

The issue in this case, as framed by our Court of Appeals in one of its opinions below, *Sharts v. Natelson,* 118 N.M. 330, 881 P.2d 690 (Ct.App.1993), is: "[W]hen may a trial court rule, as a matter of law, that harm or loss in fact exists sufficient for a cause of action in legal malpractice to accrue and begin the running of the four year limitation period provided by [NMSA 1978,] Sections 37–1–1 and –4 [ (Repl.Pamp.1990) ]"? *Id.* at 341, 881 P.2d at 700. The trial court answered this question by holding that, on the materials presented in connection with Defendants' motion for summary judgment, there was "a genuine issue of material fact regarding that point in time at which the damages ... first existed sufficient for the accrual of the instant cause of action for legal malpractice...." The court accordingly denied the motion for summary judgment; however, the court certified its ruling for interlocutory appeal. The Court of Appeals accepted the appeal and in three separate opinions—one by each of the three judges participating in the decision—affirmed, two-to-one, the trial court's order. *See id.* at 332, 881 P.2d at 698 (Alarid, J., ruling that costs and delays incurred as result of negligently drafted covenants were not sufficient to cause malpractice claim to accrue until claimant's rights were fixed by entry of adverse declaratory judgment); *id.* at 332–333, 881 P.2d at 698–99 (Apodaca, J., specially concurring in result on ground that harm to claimant was not discoverable as matter of law until new attorney entered appearance on claimant's behalf in declaratory judgment action, but disagreeing with Judge Alarid that harm or loss did not occur until trial court entered declaratory judgment); *id.* at 341–344, 881 P.2d at 700–704 (Hartz, J., dissenting on ground that essential facts of claimant's claim were discoverable well before four years prior to claimant's filing of malpractice

action, though agreeing with Judge Apodaca that harm occurred when claimant's legal rights were fixed by sales of land through deeds containing restrictive covenants permitting purchasers to enforce covenants against claimant's land).

We granted certiorari to resolve the issues in this case and in the Court of Appeals' divergent opinions. We now reverse the Court of Appeals' decision and remand to the trial court with instructions to enter summary judgment in Defendants' favor.

## I.

In 1975 Wallace G. Sharts purchased sixty acres of undeveloped land in Taos County, New Mexico. He subsequently conveyed the northerly parcel of thirty acres (Tract One) through separate sales to several individual purchasers. Most of the deeds in these sales specifically incorporated by reference a Declaration of Restrictive Covenants prepared by his attorney, Stephen Natelson, and filed in 1978. The covenants restricted development to single-family residences on lots no smaller than three acres.

In the early 1980's Sharts began developing the southerly thirty acres (Tract Two) as a residential subdivision on half-acre lots. Questions soon arose over whether the covenants applied to both Tract One and Tract Two, so as to restrict the lot size in Tract Two to a minimum of three acres. Between 1981 and 1983 Sharts received at least two letters from attorneys representing property owners in Tract One, threatening legal action to enforce the covenants as to Tract Two. In 1983, as Sharts was attempting to obtain financing to develop the first unit in Tract Two, he was informed by a title company that the covenants applied to all sixty acres of his property. The covenants, said the title company, constituted an impermissible cloud on the title to any lots developed smaller than three acres and that the title insurance company could not issue title insurance on those lots. The bank, of course, would not fund the purchasers' loans without title insurance.

Sharts and Natelson attempted unsuccessfully to negotiate with the property owners in Tract One to secure a waiver and modification of the covenants. On Natelson's suggestion, Sharts agreed to seek a declaratory judgment to establish that the covenants did not apply to Tract Two. On December 17, 1984, Natelson filed suit on Sharts' behalf for a declaratory judgment.

On April 3, 1985, while the declaratory judgment action was pending, Sharts wrote a letter to Natelson as follows:

> This letter is to inform you that if you can get a **DECLARATORY JUDEGEMENT** [sic] in my favor, I'm only going to sue you for approximately $35,000 which represents the extent of the damages I've suffered so far, in the form of interest payments I've had to pay *while waiting for you* to correct the *legal errors* you should have corrected two years ago when you were made aware of them.
>
> *If you lose,* the Declaratory Judgement to set the record straight, I intend to bring a MALPRACTICE SUIT against Natelson and Ross for a minimum of $800,000 to $2,000,000 which represents the direct and provable damages you have caused me by your *carelessness.*
>
> I am bringing to New Mexico some very expensive and very professional "family" attornies [sic] who are very interested in the case. [Capitalization and emphasis in original.]

Natelson continued to represent Sharts in the declaratory judgment action and in other matters after receiving this letter. On June 20, 1985, the law firm of Natelson and Ross was disqualified from representing Sharts in the declaratory judgment action because Natelson was a potential witness in the case. The disqualification was effective upon issuance of the order, and Sharts was given fifteen days to retain new counsel. On July 10, 1985, attorney Daniel Marlowe entered his appearance in the declaratory judgment action on Sharts' behalf. Sharts testified at his deposition that he had engaged Marlowe to represent him several days before July 10.

The declaratory judgment action was decided against Sharts on September 22, 1986, and the covenants were held applicable to

Tract Two. The Court of Appeals affirmed the declaratory judgment on June 14, 1988, in *Sharts v. Walters*, 107 N.M. 414, 759 P.2d 201 (Ct.App.1988).

On July 10, 1989, Sharts and Stakeout Properties, Inc. (Plaintiffs), filed a complaint against Natelson and his law firm, Natelson and Ross (Defendants), alleging legal malpractice in Natelson's preparation of the covenants. Defendants moved for summary judgment on the ground that the action was barred by the four-year statute of limitations in Section 37–1–4. The trial court denied the motion and the Court of Appeals affirmed. We granted Defendants' petition for a writ of certiorari to consider the question stated at the beginning of this opinion.

## II.

Our first—and only—discussion of the statute of limitations for legal malpractice claims is in *Jaramillo v. Hood*, 93 N.M. 433, 601 P.2d 66 (1979). In that case we adopted a two-step approach for determining when a cause of action for legal malpractice accrues, following the California cases of *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971) (in bank), and *Budd v. Nixen*, 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433 (1971) (in bank). In *Neel*, the California Supreme Court adopted the discovery rule, holding that "a cause of action for legal malpractice does not accrue until the client discovers, or should discover, the facts establishing the elements of his cause of action." 98 Cal. Rptr. at 849, 491 P.2d at 433. A cause of action for legal malpractice is established when the client can allege the following facts: "(1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a

reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the [client]." *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 162–63, 848 P.2d 1086, 1089–90 (Ct.App.), *cert. denied*, 115 N.M. 60, 846 P.2d 1069 (1993). Thus, the statute of limitations does not begin to run until the client discovers, or should discover, that he or she has suffered a loss and that the loss may have been caused by the attorney's wrongful act or omission. *See* 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 18.15, at 137 (3d ed. 1989 & Supp.1993) [hereinafter *Legal Malpractice* ].

The California Supreme Court also held, in the companion case *Budd v. Nixen*, that the cause of action does not accrue until the allegedly negligent conduct has caused "appreciable and actual harm." 98 Cal.Rptr. at 852, 491 P.2d at 436. In 1977 the California legislature replaced the "appreciable and actual harm" test in *Budd* with the requirement that the client must have suffered "actual injury." *See* Cal.Civ.Proc.Code § 340.6 (West 1982). We believe that the "actual injury" standard more accurately describes the nature of the harm the client must suffer before the statute of limitations begins to run. *See* 2 *Legal Malpractice, supra*, § 18.11, at 34 (discussing California approach to nature of damage necessary for accrual of cause of action). Thus, the limitations period for legal malpractice commences when (1) the client sustains actual injury [1] and (2) the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action. *See, e.g., Jaramillo*, 93 N.M. at 434, 601 P.2d at 67; *Laird v. Blacker*, 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 552, 828 P.2d 691, 693 (in bank), *cert. denied*, —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992);

---

1. The terms "damages" and "injury" are used interchangeably by many courts to refer to the "actual injury" a client must suffer before the client has a claim for relief against his or her attorney. *See, e.g., Laird v. Blacker*, 2 Cal. 4th 606, 7 Cal.Rptr.2d 550, 554–55, 828 P.2d 691, 695–96, *cert. denied*, —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992); *Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812, 816 n. 7 (1991); 2 *Legal Malpractice, supra*, § 18.11, at 38–39. We recognize that these terms have distinct meanings. *See Lovelace Medical Center v. Mendez*, 111 N.M. 336, 342, 805 P.2d 603, 609 (1991); Re-

statement (Second) of Torts §§ 7, 12 (1965). The terms "damages" and "injury," however, are used interchangeably in this opinion where necessary for consistency with the language in the cases and commentators cited. We read "damages" in these passages as "injury." In addition, in the context of legal malpractice claims, we define "injury" as "the loss of a right, remedy or interest, or the imposition of a liability." *See* 2 *Legal Malpractice, supra*, § 18.11, at 39 (suggesting that *Restatement* definition of injury is too "confining" in this context and that definition should be replaced with foregoing definition).

*Grunwald v. Bronkesh,* 131 N.J. 483, 621 A.2d 459, 464 (1993).

In the lead opinion for the Court of Appeals below, Judge Alarid reasoned that the first prong of this test could only be met by a showing of "more than nominal" harm. We believe that it is not particularly helpful to describe the nature or degree of the injury or harm required in terms of any particular quantum of damage; "the focus of the statute of limitations for legal malpractice should be on discovery of the *fact* of damage, not the amount." *Laird,* 7 Cal.Rptr.2d at 553, 828 P.2d at 694; *see also* 2 *Legal Malpractice, supra,* 18.11, at 35 n. 13 (citing cases supporting prevailing rule "that there only need be the fact of some damage rather than a specific quantity, even though significant damages may not occur until the future, if at all"). "Thus, when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." *Foxborough v. Van Atta,* 26 Cal. App.4th 217, 31 Cal.Rptr.2d 525, 530 (1994). A client may suffer injury through loss of a legal right or harm to a legal interest even though the client has not yet ascertained the amount of his or her damages, *see, e.g., Finlayson v. Sanbrook,* 10 Cal.App.4th 1436, 13 Cal.Rptr.2d 406, 410 (1992), *review denied* (Jan. 28, 1993); *Hennekens v. Hoerl,* 160 Wis.2d 144, 465 N.W.2d 812, 816 (1991); or injury may take the form of consequential or incidental damages, such as attorney's fees or costs incurred as a result of the alleged malpractice, even though these sums may be relatively minor compared with the main damage claim, *see, e.g., Royal Crown Cola Bottling Co. v. Aetna Casualty & Sur. Co.,* 438 F.Supp. 39, 46 (W.D.Okla.1977); 2 *Legal Malpractice, supra,* § 18.11, at 36.

In this case Sharts suffered injury when he lost his legal right to subdivide part of his land into lots smaller than three acres—that is, in 1978 when he sold land in Tract One pursuant to deeds containing restrictive cove-

nants that permitted purchasers to enforce those covenants on land in Tract Two.[2] *Cf. Jaramillo,* 93 N.M. at 434, 601 P.2d at 67 (damage from alleged legal malpractice in drafting will arose when testatrix died and loss of legal rights occurred). The legal costs Sharts assumed in attempting to resist imposition of the covenants on Tract Two, beginning with the declaratory judgment action filed in 1984, likewise constituted actual injury—injury that was, moreover, actually *known* when the costs were incurred. *See Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple,* 394 Mass. 265, 475 N.E.2d 390, 392 (1985) (cause of action for legal malpractice accrued when client was forced to incur legal expenses in action based in part on alleged negligent conduct of attorney). The date of actual injury, therefore, was well before July 9, 1985—the date by which the statute must have begun running in order to bar the claim.

In his opinion below Judge Alarid concluded that the "harm or loss" prong of the test could not be satisfied as a matter of law until Sharts' rights were fixed by entry of the adverse declaratory judgment. 118 N.M. at 334, 881 P.2d at 694. We respectfully disagree.

> [T]he judicial process does not create liabilities or destroy rights, but only declares what is present through the process of determining the facts and applying the law. Thus, a right, remedy or interest is usually lost, or a liability is imposed at the time of a lawyer's error, even though a court does not so declare until a later date. Although the unpredictability in resolution through the judicial process may excuse discovery of the injury, a judicial determination does not "create" the injury.

2 *Legal Malpractice, supra,* § 18.11, at 42–43 (footnotes omitted); *see also, e.g., Levin v. Berley,* 728 F.2d 551, 554 (1st Cir.1984) (cause of action did not accrue upon court's ruling; client suffered injury in form of legal fees to remove or alleviate harm caused by error at beginning of litigation); *Magnuson v. Lake,* 78 Or.App. 620, 717 P.2d 1216, 1219–

---

2. This is not to say that the statute of limitations began to run in 1978. Defendants made no showing in connection with their motion for summary judgment that Sharts knew or should have known that he had suffered this harm at the time he made the initial sales.

20 (1986) (injury occurred when clients were forced to defend declaratory judgment action, not when judgment was entered against them).

As we have said, however, a cause of action for legal malpractice does not accrue until the client discovers, or through reasonable diligence should discover, the facts essential to the client's claim. The question when a client is deemed to have discovered an attorney's malpractice and the resulting injury is generally a question of fact, but "where the undisputed facts show that [the client] knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law." *Brunacini v. Kavanagh*, 117 N.M. 122, 127, 869 P.2d 821, 826 (Ct.App.1993), *cert. denied*, 117 N.M. 215, 870 P.2d 753 (1994).

Sharts based his claim on his alleged request that Natelson draft the restrictive covenants so as to be applicable only to Tract One, not Tract Two. It is undisputed that Sharts received letters from attorneys in 1981 and 1983 contending that the covenants were applicable to both Tract One and Tract Two; that in 1983 a title company informed him that the covenants were an impermissible cloud on the title of lots smaller than three acres and that title insurance could not be issued on those lots; that in 1984 he brought a declaratory judgment action attempting to remove the cloud on his title to Tract Two; and that in April 1985 he wrote a letter to Natelson in which he accused Natelson of carelessness and threatened him with a lawsuit for damages already incurred as the result of his "legal errors."

By the time the declaratory judgment action was filed on December 17, 1984, Sharts either knew or should have known, as a matter of law, that Natelson may have been negligent in drafting the covenants and that he (Sharts) had suffered loss or harm as a result. *See Levine v. Diamanthuset, Inc.*, 722 F.Supp. 579, 590 (N.D.Cal.1989) (commencement of legal action put clients on notice of attorney's claimed negligence), *rev'd on other grounds*, 950 F.2d 1478 (9th Cir. 1991); *Salin v. Shalgian*, 18 Mass.App.Ct. 467, 467 N.E.2d 475, 477, *review denied*, 393 Mass. 1102, 469 N.E.2d 830 (1984) (same);

*Cherokee Restaurant, Inc. v. Pierson*, 428 So.2d 995, 1000 (Ct.App.), *cert. denied*, 431 So.2d 773 (La.1983) (same). In addition, Sharts showed actual knowledge of the facts essential to his claim by April 3, 1985, when he wrote the threatening letter to Natelson. *See Levin v. Berley*, 728 F.2d at 553 (client knew or should have known of attorney's alleged negligence at time letter was sent on client's behalf to attorney regarding intention to hold attorney responsible for "alleged errors made in will"); *Kabbe v. Miller*, 275 Cal.Rptr. 893, 895 (Ct.App.1990), *review denied* (Mar. 20, 1991) (client's complaint to state bar accusing attorney of mishandling funds showed discovery of alleged misconduct); *Melgard v. Hanna*, 45 Or.App. 133, 607 P.2d 795, 797 (1980) (statement by client that he had suffered business losses as result of "bad advice" from attorney showed sufficient knowledge for claim to accrue). Thus, the statute of limitations in this case had begun to run by April 3, 1985, at the latest.

### III.

Sharts urges us to adopt the "continuous representation" doctrine as a principle that tolls the statute of limitations for legal malpractice. We are not inclined to adopt the doctrine at this time (and in this case); but even if we were to adopt it, the doctrine would not have tolled the running of the statute so as to permit Sharts to bring his malpractice claim against Defendants.

Under the continuous representation doctrine, running of the statute of limitations is tolled until the representation terminates with respect to the matters that underlie the malpractice action. *Stevens v. Lake*, 615 So.2d 1177, 1182 (Miss.1993). The purpose of the doctrine is "to avoid unnecessarily disrupting the attorney-client relationship." 2 *Legal Malpractice, supra*, § 18.12, at 115. Sharts argues that, under the doctrine, running of the statute would have been tolled until July 10, 1985, when attorney Marlowe entered his appearance in the declaratory judgment action on Sharts' behalf. The inquiry, however, does not concern the point in time when there is a change of counsel but rather the date when "the attorney's representation concerning a particular

transaction is terminated." *Grago v. Robertson,* 49 A.D.2d 645, 370 N.Y.S.2d 255, 259 (1975); *see also* 2 *Legal Malpractice, supra,* § 18.12, at 119 ("The inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated."). Natelson's representation was terminated by the court on June 20, 1985. "An attorney discontinues serving a client, for the purposes of the statute of limitations, when the attorney is relieved of the obligation to serve by either the client or the court." *Hooper v. Lewis,* 191 Mich.App. 312, 477 N.W.2d 114, 116 (1991). Therefore, even if applied to this case, the continuous representation doctrine would only have tolled the statute until June 20, 1985; and Sharts' action would still have been barred.

The decision of the Court of Appeals is reversed, and the cause is remanded to the district court with instructions to enter summary judgment in Defendants' favor.

**IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI, J., concur.