**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 8 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SUE SPENCER,

      Plaintiff - Appellant,

v.

JOSEPH A. SOMMER; SOMMER,
FOX, UDALL, OTHMER,
HARDWICK & WISE, P.A.,

      Defendants - Appellees.

No. 02-2229
(D.C. No. CIV-00-1774 JP/LFG)
(D. N.M.)

**ORDER AND JUDGMENT**  *

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.

    Plaintiff Sue Spencer appeals from the entry of summary judgment in favor

of defendants, attorney Joseph A. Sommer and his law firm Sommer, Fox, Udall,

Othmer, Hardwick & Wise, P.A. in this diversity action for legal malpractice,

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

breach of fiduciary duty, and deceit.  Spencer alleged that Sommer, as co-personal representative of her late father's estate, and Sommer's firm, as counsel for the estate, mishandled matters ancillary to the estate's administration.  The district court granted summary judgment to defendants on several grounds, holding that Spencer's claims were (1) time-barred, (2) precluded by res judicata and collateral estoppel, and (3) failed to establish the requisite attorney-client relationship to sound in legal malpractice.  On de novo review, see Tiberi v. Cigna Corp. , 89 F.3d 1423, 1428 (10 th Cir. 1996), we agree that Spencer's claims are time-barred and, accordingly, affirm without reaching any of the other issues raised.

As a threshold matter, we address Spencer's objection that an order issued by the magistrate judge denied her adequate discovery to respond to defendants' summary judgment motion.  Review of a magistrate judge's ruling must first be sought in the district court, as "appellate courts are without power to hear appeals directly from orders of federal magistrates."  Niehaus v. Kan. Bar Ass'n , 793 F.2d 1159, 1165 (10 th Cir. 1986).  Because Spencer did not challenge the magistrate judge's order in district court, we may not consider this challenge.  See also Pippinger v. Rubin , 129 F.3d 519, 533 (10 th Cir. 1997) (" It is a well established rule that the court of appeals cannot review a magistrate judge's order . . . .").

We note that months after the magistrate judge issued its order denying Spencer's request for additional discovery, defendants submitted a notice to file

supplemental documents in support of summary judgment. (App. vol. 3, tab 19.) Spencer moved to strike this submission, or, in the alternative, for the court to reconsider her request for additional discovery. ( Id., tab 20.) Spencer does not argue that her motion to strike constitutes a challenge to the magistrate judge's order. Moreover, because the district court expressly stated that it did not rely on defendants' additional documents in granting summary judgment and thus dismissed Spencer's motion as moot, we would not consider such an argument persuasive in any event. ( Id., tab 23, at 859.) Therefore, we decline to consider Spencer's challenge to the magistrate's order denying additional discovery.

Because this is a diversity case alleging legal malpractice, we apply the limitations law of the forum state. Jenkins v. City of Topeka , 136 F.3d 1274, 1275 (10 th Cir. 1998). New Mexico courts have not resolved whether the three-year statute for personal injury actions, N.M. Stat. Ann. § 37-1-8, or the four-year statute for claims on unwritten contracts and "all other actions not herein otherwise provided for," N.M. Stat. Ann. § 37-1-4, should apply in the legal malpractice context. [1] See, e.g., Delta Automatic Sys., Inc. v. Bingham , 974 P.2d 1174, 1179 (N.M. Ct. App. 1998); Duncan v. Campbell , 936 P.2d 863, 864-65 (N.M. Ct. App. 1997). The district court concluded that this action filed

_____

[1] The parties agreed that the limitations analysis for legal malpractice claims should control the disposition of Spencer's related claims as well. See App. vol. 3, tab 23, at 853 n.5.

on December 18, 2000, was untimely under either statute, obviating a definitive choice between the two. We reach the same conclusion.

A legal malpractice claim accrues when an attorney causes actual injury to a client who knows, or by reasonable diligence should know, facts essential to a cause of action to redress the injury. Sharts v. Natelson, 885 P.2d 642, 645 (N.M. 1994). "Thus, the statute of limitations does not begin to run until the client discovers, or should discover, that he or she has suffered a loss and that the loss may have been caused by the attorney's wrongful act or omission." Id.

Defendants insist that the bare factual knowledge of counsel's conduct is all that is required to start the clock on a malpractice claim, regardless of whether the client knows or should know anything that would call that conduct into question. Conversely, Spencer argues that a legal malpractice action does not accrue until the client learns that an attorney's conduct is legally redressible. Neither of these positions, however, correctly read the rule articulated in Sharts, which reflects a measured approach lying between these extremes: the known facts must suggest some error or omission by counsel to prompt the client's diligent preservation of her claim, but it is not necessary that the client know that the facts satisfy a legal standard for liability.

For example, in Sharts, the New Mexico Supreme Court held that plaintiff's letter accusing his attorney of carelessness in preparing real estate covenants

constituted sufficient knowledge to trigger the malpractice limitations period. Id. at 647. It was not necessary that plaintiff knew the mistake constituted actionable malpractice; it was enough that he knew his attorney "may have been negligent in drafting the covenants." Id. In so concluding, the court relied on several cases determining that a claim accrues when plaintiffs demonstrate knowledge of the "errors," "mishandl[ed] funds," or "bad advice" on which their malpractice claims rest. Id. (citing Levin v. Berley, 728 F.2d 551, 553 (1 st Cir. 1984); Kabbe v. Miller, 275 Cal. Rptr. 893, 895 (Cal. Ct. App. 1990); Melgard v. Hanna, 607 P.2d 795, 797 (Or. Ct. App. 1980)). Subsequent decisions by the New Mexico Court of Appeals are consistent with this view. See, e.g., Delta Automatic Sys., Inc, 974 P.2d at 1180-81 (holding claim accrued, even if client did not know counsel had committed malpractice, when client knew counsel had failed to terminate a union contract over a year after he was retained to do so); Duncan, 936 P.2d at 865 (holding claim accrued at time when plaintiff alleged he knew counsel "had not adequately and properly represented him").

Spencer's claims turn on defendants' allegedly erroneous legal advice regarding the sale of land in her father's estate to another of defendants' clients, Ralph Brutsche. In 1987, Spencer's father contracted to sell a 160-acre tract to Brutsche. Complications arose and, when her father died in 1989, Brutsche had not timely consummated the contract nor accepted an extension he was offered.

Spencer alleges that she relied on defendants' advice that Brutsche could enforce the 1987 contact, which would result in dire IRD (income-in-respect-of-a-decedent) tax consequences, when she decided to negotiate a new contract with Brutsche in 1990 on less favorable terms rather than seek other purchasers. Spencer claims that she later learned the 1987 contract was <u>not</u> enforceable and, hence, should not have affected her decision to sell the land to Brutshe.

As a result of what she felt was her constrained bargaining position, Spencer suffered actual loss as a result of defendants' advice long before the December 18, 1996 cutoff for the four-year limitations period. The critical question, then, is when Spencer knew or should have known that defendants may have been negligent (or intentionally wrongful) in giving her that advice. Spencer's affidavit states that she retained attorney Earl Potter in 1995 to review defendants' records of the Brutsche transaction. Although Potter did not conclude that defendants mishandled the matter, Spencer's doubts persisted and, in January 1996, she asked Sommer and the firm to relinquish their role in the probate proceedings. When they declined to withdraw, one month later, Spencer retained attorney Martin Threat to look into various concerns she had about defendants' representation, particularly in connection with the administration of her father's estate. Threat sought a full inventory of the estate, but later withdrew for personal reasons before completing his review. Finally, in 1999, Spencer once

more retained an attorney, this time Donald Swaim, to review the Brutsche transaction. Based on facts related by Spencer, Swaim concluded that the 1987 Brutsche contract was not enforceable and would not result in IRD tax consequences as defendants suggested. Spencer argues that her cause of action against defendants did not accrue until Swaim's assessment of the Brutsche transaction confirmed her suspicions about the legal inadequacy of defendants' advice.

We disagree. Swain's negative professional opinion was not necessary to trigger the statute of limitations. Again, the crucial juncture is when Spencer knew or should have known that defendants' advice may have been wrong. Spencer's bare factual knowledge of defendants' conduct, i.e., that they advised her to negotiate with Brutsche to avoid IRD tax liabilities, is not itself sufficient to trigger the limitations period. However, on Spencer's own recital of the salient facts, she clearly had doubts about defendants' advice regarding the Brutsche transaction as early as 1995 when she retained Potter to evaluate the matter, [2] and

---

[2] Spencer argues that because Potter did not catch the error later discerned by Swaim, her retention of Potter should not trigger the accrual of her claim under the discovery rule. Thus Spencer assumes that if a client's suggestion of error is not confirmed by a professional assessment, an action cannot accrue. Spencer cites no authority for her view, which runs counter to the basic thrust of the case law. For example, New Mexico courts have repeatedly stated that accrual of a malpractice claim is not postponed "until the plaintiff consults an attorney," Delta Automatic Sys., Inc., 974 P.2d at 1181 (quotation omitted); a fortiori, accrual is

(continued...)

certainly by January 1996, when she asked defendants to relinquish their role in the probate proceedings. Because both these dates precede the December 18, 1996 cutoff for the four-year limitations period, we conclude that Spencer's claims are time-barred. [3]

Finally, Spencer seeks to invoke the "continuous representation" doctrine recognized in a majority of states to toll the limitations period until the attorney-client relationship terminates with respect to the matters that form the basis of the client's malpractice suit. See 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 22.13, at 431-37 (5 th ed. 2000). New Mexico courts have thus far declined to adopt this doctrine, at least in cases where compelling circumstances were not present. See Sharts, 885 P.2d at 647; LaMure v. Peters, 924 P.2d 1379, 1385 (N.M. Ct. App. 1996); see also Delta Automatic Sys., Inc., 974 P.2d at 1181. Considerations of federalism make us reluctant to take this step on behalf of New

---

[2](...continued)
not postponed during multiple professional consultations until the plaintiff succeeds in securing an opinion supporting a legal claim. Again, the critical inquiry is when the client knows enough suggestive facts to suspect that counsel may have acted wrongfully, not when she knows that an actionable claim exists.

[3]     Our analysis has concentrated on the disputed Brutsche transaction that is the focal point of Spencer's case. We have not, however, overlooked her other allegations more directly associated with estate administration. To the extent she maintains that these secondary matters would survive even if her primary claim was time-barred, the undisputed facts clearly demonstrate otherwise. By no later than January-February 1996, she had become just as dissatisfied and suspicious regarding defendants' overall administration of the estate as she was regarding the primary Brutsche transaction.

Mexico courts. However, even if adopted, the doctrine would not apply here for two reasons.

First, "[t]he purpose of the [continuous representation] doctrine is to avoid unnecessarily disrupting the attorney-client relationship." Sharts, 885 P.2d at 647 (quotation omitted). Consequently, "[o]ne of the predicates to application of the continuous representation doctrine is continuing trust and confidence" between client and attorney. Pittelli v. Schulman, 128 A.D.2d 600, 601 (N.Y. App. Div. 1987); see Hendrick v. ABC Ins. Co., 787 So.2d 283, 293 (La. 2001). Thus, the doctrine has not been applied when a dissatisfied or suspicious client sought "second opinions" regarding counsel's conduct, Hendrick, 787 So.2d at 293, or attempted to terminate or curtail the professional relationship, Pittelli, 128 A.2d at 601. Cf. LaMure, 924 P.2d at 1385 (concluding that in light of dissatisfied client's effort to limit professional duties of accountant, "the policies behind adopting the continuous relationship exception severely diminish," and, "[t]hus, even if [this court] were free to question the Supreme Court's recent, express disinclination [in Sharts] to adopt the continuous relationship exception, [this court] would not do so in this case") (citation omitted). Spencer repeatedly retained other representation to scrutinize defendants' conduct, and tried to force defendants' withdrawal from the estate proceedings well before the operative limitations date. Requiring Spencer to take action to preserve potential legal

claims by pursuing the many suspicions of misconduct she harbored at that time hardly constitutes an unnecessary disruption of an existing relationship of professional trust.

Second, and this point relates with particular force to Spencer's primary complaint about the Brutsche transaction, "[t]he predicate of the continuous representation rule is not merely the existence of an attorney-client relationship but [continued] representation on the same subject matter [underlying the malpractice claim]. Representation on unrelated matters is not continuous representation. A general, ongoing relationship on other matters does not suffice." 3 Mallen & Smith, supra § 22.13, at 445–46; see Sharts, 885 P.2d at 647–48 (noting necessary continuity relates to "the attorney's representation concerning a particular transaction") (quotation omitted). Thus, continued representation by counsel on other matters will not toll the limitations period for malpractice claims relating to counsel's prior conduct on discrete questions or particular transactions, such as failure to record a trust, negligent handling of a sale, or erroneous title advice. See, e.g., Stevens v. Lake, 615 So.2d 1177, 1182 (Miss. 1993). There is some dispute about the timing, nature, and even existence of a professional relationship between the parties in the years following the conclusion of Spencer's dealings with Brutsche; suffice it to say that whatever the

precise character of that relationship, it does not serve to toll the limitations period for Spencer's claims of misconduct by defendants in connection therewith.

We conclude that Spencer's claims are time-barred and, therefore, AFFIRM the judgment of the district court.

Entered for the Court

Carlos F. Lucero
Circuit Judge