**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SARA CAHN,

     Plaintiff - Appellant,

v.

TERRY M. WORD; TERRY M. WORD,
P.C.,

     Defendants - Appellees.

No. 19-2043
(D.C. No. 1:18-CV-00396-JAP-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Plaintiff-Appellant Sara Cahn brought this action against

Defendants-Appellees Terry M. Word and Terry M. Word, P.C. (collectively

"Defendants"), alleging they committed malpractice in representing her in another

action. She now appeals the district court's grant of summary judgment on statute-

of-limitations grounds and has also moved that we certify a related question of state

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

law.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's decision and deny her motion to certify.

## BACKGROUND

This diversity action arises from a medical malpractice action brought by Ms. Cahn in which she was represented by Defendants.  Ms. Cahn filed the action in New Mexico state court against Lovelace Health Systems and several physicians on April 9, 2009.  In her complaint, she sought to hold the defendants liable for failing to inform her that a pelvic ultrasound performed at a Lovelace facility on May 19, 2006 had revealed a potentially cancerous mass on her ovary.  She also alleged that a doctor who reviewed the ultrasound informed her in an August 8, 2006 follow-up consultation that she had ovarian cysts that were "nothing to worry about" and diagnosed her with endometriosis.  Jt. App. at 7.  Because Ms. Cahn could not recall the name of this doctor, Defendants identified him as "John Doe" physician in the April 2009 complaint.  Two years after the 2006 ultrasound and follow-up appointment, Ms. Cahn was diagnosed with ovarian cancer when she sought treatment for the same pelvic pain that had prompted the 2006 ultrasound.

On July 1, 2010, through discovery received from Lovelace, Defendants identified Dr. John Berryman as the physician who had misdiagnosed Ms. Cahn at the August 8, 2006 consultation.  Defendants amended the medical malpractice complaint on July 9, 2010 to name Dr. Berryman as an individual defendant.

Dr. Berryman moved for summary judgment, asserting Ms. Cahn's claims against him were barred by New Mexico's three-year statute of repose for medical

2

malpractice claims.  *See* N.M. Stat. Ann. § 41-5-13 (1978).  The state district court denied his motion, ruling that though the statute of repose on Ms. Cahn's claims against Dr. Berryman had expired on August 8, 2009, before she amended her complaint, she could nonetheless proceed against Dr. Berryman because application of the statutory bar would violate her right to due process under the United States and New Mexico constitutions.

The state court certified its decision for interlocutory appeal, and in September 2012 Dr. Berryman filed an application for interlocutory appeal with the New Mexico Court of Appeals.  In the application, which Ms. Cahn reviewed, Dr. Berryman alleged that she and Defendants could have identified him sooner through available discovery procedures but failed to do so.  The state court of appeals denied Dr. Berryman's application.

Subsequently, in June 2013, Dr. Berryman and Ms. Cahn stipulated to a conditional directed verdict and final judgment in which Dr. Berryman admitted his liability to Ms. Cahn in the amount of $700,000, but reserved his right to appeal the judgment on the ground that her claims against him were time-barred.  Ms. Cahn testified that at about this time she believed Defendants had made a mistake in failing to identify Dr. Berryman earlier in the litigation.

Dr. Berryman filed his appeal the following month.  Ms. Cahn testified that by this time she understood that another attorney, Felicia Weingartner, had taken over her case.  Though Defendants remained counsel of record until late 2014, when

3

Defendant Word retired, Ms. Cahn testified that she did not think she had any contact with him after the stipulated judgment was entered in June 2013.

On April 30, 2015, the New Mexico Court of Appeals entered its decision in Dr. Berryman's appeal. It reversed the state district court, concluding Ms. Cahn's claims against the doctor were time-barred because they were filed after expiration of the three-year statute of repose and were not subject to a due process exception to the statutory bar.[1] The New Mexico Supreme Court affirmed.

Ms. Cahn filed the present action on April 27, 2018, asserting that Defendants committed professional negligence and breached their contractual duty to provide quality legal services by failing to identify Dr. Berryman within the statute of repose for medical malpractice claims and timely name him as a defendant. Defendants moved for summary judgment, arguing that Ms. Cahn's claims against them were barred by the applicable statute of limitations, which requires that legal malpractice claims be brought within four years of accrual. The district court agreed that Ms. Cahn's claims accrued more than four years before she brought this suit, and therefore granted Defendants' motion and dismissed her claims with prejudice.

---

[1] The New Mexico Court of Appeals held the ten-and-one-half-month period between Ms. Cahn's discovery that she had a medical malpractice claim against Dr. Berryman (when she was diagnosed with ovarian cancer in September 2008) and expiration of the three-year statute of repose on August 8, 2009, was a constitutionally reasonable amount of time for her to learn Dr. Berryman's name and timely add him to her medical malpractice suit. *See Cahn v. Berryman*, 355 P.3d 58, 64 (N.M. Ct. App. 2015), *aff'd*, 408 P.3d 1012 (N.M. 2017).

Ms. Cahn timely appealed the district court's ruling. She has also asked us to certify a question of state law to the New Mexico Supreme Court that relates to one of the arguments the district court rejected in its decision. We address her certification motion, which concerns the continuous representation doctrine, in our discussion below.

**DISCUSSION**

We review de novo the grant of summary judgment, viewing the factual record and making reasonable inferences from it in the light most favorable to the non-movant. *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material only if it might affect the outcome of the suit under the governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1265-66 (10th Cir. 2015) (internal quotation marks and citations omitted). Because this is a diversity action, we apply the substantive law of the forum state, New Mexico, to the legal questions before us. *See Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019).

Ms. Cahn raises three issues on appeal: (1) whether the district court erred in ruling as a matter of law that her legal malpractice claim was untimely because it accrued more than four years before she filed this action; (2) whether the district

5

court erred in refusing to toll the statute of limitations pursuant to the continuous representation doctrine; and (3) whether the district court erred in granting summary judgment on her breach of contract claim. We address each issue in turn.

**A. Legal malpractice claims**

Under New Mexico law, a legal malpractice claim must be filed within four years of the date of accrual. *See Jaramillo v. Hood*, 601 P.2d 66, 67 (N.M. 1979) (applying N.M. Stat. Ann. § 37-1-4 (1978)). Accordingly, Ms. Cahn's legal malpractice claims against Defendants are untimely if they accrued before April 27, 2014, that is, four years before she filed this action. The district court held her claims accrued no later than June 2013 and were therefore time-barred.

A claim for legal malpractice in New Mexico accrues "when (1) the client sustains actual injury and (2) the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Sharts v. Natelson*, 885 P.2d 642, 645 (N.M. 1994) (footnote and internal quotation marks omitted). The essential facts the client must or should have discovered for the statute of limitations to begin to run are that "he or she has suffered a loss and that the loss may have been caused by the attorney's wrongful act or omission." *Id.* "The question [of] when a client is deemed to have discovered an attorney's malpractice and the resulting injury is generally a question of fact, but where the undisputed facts show that the client knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law." *Id.* at 647 (internal quotation marks and brackets omitted).

6

Ms. Cahn concedes that she suffered actual injury "at the time that Defendants failed to timely name Dr. Berryman in the medical malpractice lawsuit," Aplt. Opening Br. at 10 n.2, because this alleged negligence ultimately led her to lose her claim against Dr. Berryman. This concession is in accord with New Mexico law, which holds that a party sustains actual injury "when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability . . . regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." *Sharts*, 885 P.2d at 646 (internal quotation marks omitted)). But Ms. Cahn argues here, as she did to the district court, that she did not discover this injury until April 30, 2015, when the New Mexico Court of Appeals overturned the lower court decision that had relied on due process principles to allow her to proceed with her untimely filed claims. Up until this decision, Ms. Cahn asserts, "a reasonable layperson in [her] position would not have reason to believe that her attorney had caused her harm." Aplt. Opening Br. at 12.

We disagree. We begin our analysis by noting that the New Mexico Supreme Court has rejected the proposition that a client is not injured until the final judicial determination that a right has been lost due to alleged malpractice. *See Sharts*, 885 P.2d at 646. In *Sharts*, the plaintiff-client alleged his former attorney had committed legal malpractice in drafting covenants that erroneously restricted development of a tract of plaintiff's land. The defendant-attorney moved for summary judgment on the ground that the action was barred by the four-year statute of limitations. The district court denied the motion and the court of appeals affirmed,

7

holding that the plaintiff had not been harmed by the alleged malpractice until a court fixed the plaintiff's rights by entering a declaratory judgment that the restrictive covenants applied to the land in question. *See id.* at 645, 646. But the New Mexico Supreme Court expressly rejected the court's reliance on this judicial determination, declaring instead that the client was injured by his attorney's malpractice much earlier, when the mistaken covenants caused him to lose the right to develop the property as he had planned. *See id.* at 646. This was so, the court explained, because "a right, remedy or interest is usually lost . . . at the time of a lawyer's error, even though a court does not so declare until a later date" *Id*. (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 18.15, at 137 (3d ed. 1989 & Supp. 1993) [hereinafter *Legal Malpractice*]). Thus, when the attorney's "malpractice results in the loss of a right," as Ms. Cahn alleges, the client is injured "regardless of whether future events," such as the Court of Appeals decision here, "may affect the permanency of the injury or the amount of monetary damages eventually incurred." *Id*.

Ms. Cahn acknowledges this language in *Sharts*, but asserts it is not relevant to determining when she discovered or should have discovered Defendants' malpractice and the resulting injury. In support of this position, she points to the New Mexico Supreme Court's observation in *Sharts* that "the unpredictability in resolution through the judicial process may excuse discovery of the injury." *Id.* at 646 (quoting *Legal Malpractice* § 18.11, at 42-43). But Ms. Cahn reads too much into this statement, especially in light of the New Mexico court's further discussion of the

8

discovery issue in *Sharts*. Nowhere in *Sharts*, for example, does the New Mexico court suggest a general rule that a client neither knows nor should know of his or her attorney's malpractice and resulting harm until the harm is fixed by a court decision. To the contrary, in *Sharts* the New Mexico Supreme Court did not look at all to the judicial decision that confirmed the plaintiff-client's loss in determining when he discovered or should have discovered his attorney's malpractice and the resulting loss. Instead, it held the plaintiff-client "either knew or should have known, as a matter of law, that [his attorney] may have been negligent in drafting the covenants and that he [the client] had suffered loss or harm as a result" when the client brought a declaratory judgment action in an attempt to avoid the potential harm (enforcement of the restrictive covenants) caused by his attorney's negligence. *Id.* at 647. Obviously, this discovery date preceded the judicial determination confirming the harm that was later entered in that action.[2]

---

[2] Ms. Cahn argues this result is distinguishable because the plaintiff-client in *Sharts* knew of his attorney's error as a result of receiving letters from two attorneys representing adverse parties and a title company that asserted the restrictive covenants applied to the property in question. But we see no material distinction between the notice these assertions provided and that provided by Dr. Berryman's assertion in his September 2012 interlocutory appeal application that Ms. Cahn and her attorneys had erred by failing to timely identify and name him in the medical malpractice action. Nor are we persuaded that *Sharts* is distinguishable because "in addition" the court there noted the plaintiff-client demonstrated actual knowledge of the attorney's error a few months after he filed the declaratory judgment action when he threatened to sue his attorney for malpractice. 885 P.2d at 647; *see id.* at 644. Not only was this an alternative basis for the court's discovery holding, but in this case, Ms. Cahn testified that by June 2013 she too believed Defendants had made a mistake in failing to identify Dr. Berryman earlier in the litigation.

This discussion in *Sharts* suggests that under New Mexico law a client knows or should know of her attorney's negligence and the resulting harm, as a matter of law, when she has notice of the negligent conduct and resulting potential harm and is forced to take action to avoid or mitigate that harm. Here, as discussed in more detail below, there is no dispute that Ms. Cahn knew of Defendants' alleged negligence in failing to timely identify and name Dr. Berryman no later than June 2013, knew this negligent failure put her claims against him at risk of dismissal, and was forced to take action, i.e., defending against Dr. Berryman's timeliness challenge, in an effort to avoid this harm. Accordingly, under New Mexico law she cannot claim that she neither knew nor should have known of Defendants' alleged negligence and the resulting harm until the New Mexico Court of Appeals determined the extent and permanence of that harm in its April 30, 2015 decision.

Ms. Cahn further asserts that she did not discover that Defendants had committed an error until the New Mexico Court of Appeals's decision because it was only then that she learned that Defendants had been mistaken in advising her that New Mexico law allowed her to assert her claim against Dr. Berryman even though she and Defendants knew it was filed outside the statutory period. But the malpractice Ms. Cahn alleged in this action is not this mistaken advice, it is that Defendants "fail[ed] to timely discover the identity of Dr. Berryman within the Medical Malpractice Act's statute of repose and fail[ed] to timely amend [her]

10

complaint . . . to name Dr. Berryman as an individual defendant."[3]  Jt. App. at 10.

Ms. Cahn does not and cannot contend that she was unaware of this alleged error

until the New Mexico Court of Appeals issued its decision.

Similarly, Ms. Cahn also asserts that Defendants' mistaken advice prevented

her from discovering that she suffered any harm as a result of Defendants' negligence

until the New Mexico Court of Appeals proved that advice wrong by ruling that her

claims were time-barred.  But the undisputed facts show that Ms. Cahn knew or

should have known during the district court proceedings that her ability to pursue

Dr. Berryman for malpractice was at risk as a result of Defendants' alleged

negligence in failing to timely name him.  Ms. Cahn also testified that she believed

Defendants had made a mistake in not naming Dr. Berryman earlier by the time of

the June 2013 conditional settlement.  Further, Ms. Cahn was aware at the time of the

settlement that she would not receive the stipulated damages, if at all, until

Dr. Berryman's timeliness appeal was decided.  This delay and any expenses

Ms. Cahn incurred in litigating the timeliness issue are also injuries attributable to

Defendants' alleged negligence that Ms. Cahn knew or should have known of no later

than June 2013.  *See Sharts*, 885 P.2d at 646 (holding actual injury "may take the

form of consequential or incidental damages, such as attorney's fees or costs incurred

---

[3]  Similarly, in identifying when she suffered actual injury as a result of Defendants' alleged malpractice, Ms. Cahn points to "the time Defendants failed to timely name Dr. Berryman in the medical malpractice lawsuit."  Aplt. Opening Br. at 10 n.2.

11

as a result of the alleged malpractice, even though these sums may be relatively minor compared with the main damage claim").

Finally, Ms. Cahn asserts the district court's summary judgment decision must be reversed because the court improperly weighed the evidence against her in deciding that her claims accrued no later than June 2013 and were therefore time-barred. Based on our review of the record, we discern no such error. Ms. Cahn testified that she knew at the time Defendants discovered Dr. Berryman's identity and added him to the medical malpractice complaint that these actions occurred after the statutory period to sue had expired and that the statutory time bar would therefore be an issue in maintaining her claim against him. Her testimony also established that she knew of Dr. Berryman's motion to dismiss her claims based on Defendants' failure to timely add him to her suit. She further testified that she reviewed Dr. Berryman's application for interlocutory appeal in September 2012, in which he identified actions Defendants had failed to take that would have allowed them to identify and name the doctor before the statute of repose expired. As a result, she knew or should have known by then of Defendants' alleged errors and omissions in failing to timely identify Dr. Berryman. Finally, Ms. Cahn testified that by June 2013, when the conditional stipulated judgment was entered, she believed that Defendants had made a mistake in not identifying Dr. Berryman earlier in the litigation and knew that Dr. Berryman was appealing the judgment as a result of the mistake and that she would not receive the stipulated damages if he prevailed.

12

In light of this record and New Mexico law as described above, the undisputed facts show that by no later than June 2013, Ms. Cahn had suffered actual injury as a result of Defendants' failure to timely identify and name Dr. Berryman in the medical malpractice complaint, and knew or should have known of Defendants' negligent conduct and that she had been injured as a result. Accordingly, we agree with the district court that Ms. Cahn's legal malpractice claims accrued no later than June 2013, more than four years before she filed this action.

## B. Continuous representation doctrine

### 1. The district court's decision

"Under the continuous representation doctrine, running of the statute of limitations is tolled until the representation terminates with respect to the matters that underlie the malpractice action." *Sharts*, 885 P.2d at 647. "The purpose of the doctrine is to avoid unnecessarily disrupting the attorney-client relationship." *Id.* (internal quotation marks omitted).

Ms. Cahn argued to the district court that her claims were timely based on the doctrine, but the district court did not apply it because the New Mexico courts have not adopted the doctrine to date and because the court was not convinced that the doctrine applied in light of the undisputed facts. Ms. Cahn now urges us to reverse the district court and apply the doctrine to toll the statute of limitations on her claims.

As the district court properly found, the initial problem with Ms. Cahn's request is that New Mexico's appellate courts have not adopted the doctrine, even though they have had several opportunities to do so. Most notably, in *Sharts*, the

13

New Mexico Supreme Court expressly declined the plaintiff's request that it adopt the doctrine, stating it was "not inclined to adopt the doctrine at this time (and in this case)." 885 P.2d at 647. The New Mexico Court of Appeals noted this decision in declining to adopt the doctrine in a subsequent malpractice action. *See LaMure v. Peters*, 924 P.2d 1379, 1385 (N.M. Ct. App. 1996) (declining plaintiffs' request to adopt the doctrine in an accounting malpractice action and noting the New Mexico Supreme Court's "recent, express disinclination to adopt" the doctrine); *see also Delta Automatic Sys., Inc. v. Bingham*, 974 P.2d 1174, 1181 (N.M. Ct. App. 1998) (noting that the New Mexico Supreme Court "express[ed] reservations" about the doctrine in *Sharts*). Indeed, we recognize that, in light of these decisions, a panel of this court has previously expressed reluctance to adopt the continuous representation doctrine "on behalf of New Mexico courts." *Spencer v. Sommer*, 91 F. App'x 48, 52 (10th Cir. 2004) (unpublished).

Ms. Cahn argues the cited New Mexico decisions are distinguishable because in each case the New Mexico court found that even if it adopted the doctrine, it was not applicable to the case before it. Here, Ms. Cahn asserts, the doctrine would apply and toll the statute of limitations on her legal malpractice claim until the end of 2014, when Defendant Wood retired, thereby bringing her legal malpractice claims within the four-year statute of limitations.

We do not share Ms. Cahn's confidence that the continuous representation doctrine, if adopted, would apply and toll the statute of limitations in this case. The doctrine only applies "until the representation terminates with respect to the matters

14

that underlie the malpractice action." *Sharts*, 885 P.2d at 647. Ms. Cahn testified

that she understood that Defendants had handed her case over to another attorney,

Ms. Weingartner, when the stipulated judgment entered in June 2013 and that she did

not think that she had any contact with Defendants after this date. Ms. Cahn counters

by noting that Defendants remained counsel of record in her case against

Dr. Berryman at least until Defendant Wood retired and closed his firm late in 2014.

But the relevant inquiry here is not "whether an attorney-client relationship still

exist[ed] but when the representation of the specific matter terminated." *Id.* at 648

(internal quotation marks omitted). Ms. Cahn did not produce evidence disputing

that Defendants' representation of her in the medical malpractice action effectively

ended when they handed her case over to Ms. Weingartner. And as a result of this

hand-off, it is also not clear to us that the purpose of the doctrine, avoiding

unnecessary disruption to the attorney-client relationship, *see id.* at 647, would be

served by applying the doctrine to toll Ms. Cahn's claims against the Defendants.

Given these uncertainties and the New Mexico courts' failure to adopt the continuous

representation doctrine as described above, we see no error in the district court's

decision not to adopt and apply the doctrine in deciding Defendants' motion for

summary judgment.

### 2.    Motion to certify

Perhaps anticipating this outcome, Ms. Cahn has also filed a motion to certify

this issue to the New Mexico Supreme Court. More specifically, she requests that we

ask the New Mexico Supreme Court "[w]hether New Mexico law recognizes the

15

continuous representation doctrine which tolls the limitation period for a legal malpractice claim while an attorney represents his or her client on the same subject matter giving rise to the legal malpractice claim[.]" Pl.-Aplt.'s Mot. to Certify Question of State Law at 1. Implicitly, she also asks that we defer our decision on her appeal until the New Mexico Supreme Court responds to this question.

"When state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) abate the case in this court to await the state court's decision of the certified question." 10th Cir. R. 27.4(A). New Mexico permits its highest state tribunal to "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state." N.M. Stat. Ann. § 39-7-4 (1978). In deciding whether to grant a certification request, we also look to federal law, which counsels that "we apply judgment and restraint before certifying," and limit certification to "circumstances where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). The decision on whether to certify a state-law question ultimately "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

Upon consideration of these state and federal standards, we deny Ms. Cahn's motion. As described above, her question is not novel, because the New Mexico

16

appellate courts have considered it on several occasions. That the New Mexico Supreme Court has thus far expressly declined to adopt the doctrine also weighs against certification. In addition, we are not persuaded that Ms. Cahn's question, even if answered in the affirmative, may be determinative in this case because, for the reasons we have explained, it is far from certain that the continuous representation doctrine, if adopted by the New Mexico Supreme Court, would apply here. We also note that Ms. Cahn did not ask the district court to certify this question before it ruled, which is another factor that weighs against her request. *See, e.g.*, *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("We generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court.") Accordingly, we decline to certify Ms. Cahn's question and deny her motion.

### C. Breach of contract claim

Finally, Ms. Cahn argues the district court erred in granting summary judgment on her breach of contract claim, without giving her notice and an opportunity to argue that it was subject to the longer statute of limitations applicable to actions founded on a written contract. But this argument rests on a false premise, which is that Defendants only moved for summary judgment on her professional negligence claim. In fact, as the district court recognized, Defendants' motion consistently sought dismissal of Ms. Cahn's "claims" on the ground that they were time-barred. *E.g.*, Jt. App. at 17, 18, 24, 89, 103. If Ms. Cahn believed that her

17

breach of contract claim was not subject to the four-year statute of limitations for legal malpractice claims that Defendants argued, then she should have presented this argument to the district court. She did not do so.[4]

"As a general matter, arguments not raised before the district court are forfeited on appeal." *United States v. Garcia*, 936 F.3d 1128, 1131 (10th Cir. 2019); *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). We only consider such forfeited arguments under the plain error standard of review.[5] *See Garcia*, 936 F.3d at 1131. Ordinarily, "if a defendant does not argue for plain error in his opening brief on appeal, he waives any plain error argument." *Id.* Here, Ms. Cahn did not argue plain error in her opening brief or even in her reply brief after Defendants raised the forfeiture issue in response to her opening brief. Accordingly, she has waived this argument in this court, and we do not consider it. *See Richison*, 634 F.3d at 1130–31 (explaining that the failure to argue plain error "marks the end of the road for an argument for reversal not first presented to the district court").

---

[4] We also note that Ms. Cahn does not challenge the district court's finding that both her professional negligence and breach of contract claims "are based on allegations of legal malpractice." Jt. App. at 103.

[5] "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Richison*, 634 F.3d at 1128.

**CONCLUSION**

For the reasons stated above, we affirm the district court's dismissal of Ms. Cahn's claims and deny her motion to certify a question of state law.

Entered for the Court


Jerome A. Holmes
Circuit Judge